UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

PETER P. MARTINEZ,                    )
                                      )   No. CV-10-0363-CI
          Plaintiff,                  )
                                      )   ORDER GRANTING PLAINTIFF'S
v.                                    )   MOTION FOR SUMMARY JUDGMENT
                                      )   AND ORDERING REMAND FOR AN
MICHAEL J. ASTRUE, Commissioner       )   AWARD OF BENEFITS
of Social Security,                   )
                                      )
          Defendant.                  )
                                      )
_____

     BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF

No. 13, 16.)  Attorney Jeffrey Schwab represents Peter P. Martinez

(Plaintiff); Special Assistant United States Attorney Robert L. Van

Saghi represents the Commissioner of Social Security (Defendant).

The parties have consented to proceed before a magistrate judge.

(ECF No. 6.)  After reviewing the administrative record and briefs

filed by the parties, the court **GRANTS** Plaintiff's Motion for

Summary Judgment and **REMANDS** the matter to the Commissioner for an

immediate award of benefits.

**JURISDICTION**

     On June 12, 2006, Plaintiff protectively filed a Title II

application for a closed period from January 20, 2004, through June

30, 2008, for disability and disability insurance benefits.  (Tr.

10; 23.)  He also filed a Title XVI application for supplemental

security income for the same closed period.  (Tr. 96.)  He alleged

disability due to obsessive compulsive disorder, panic disorder, and

major depression with OCD.  (Tr. 100.) Plaintiff's claim was denied

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ). (Tr. 57-68.) A hearing was held on September 30, 2008, at which Vocational Expert Daniel McKinney, and Plaintiff, who was represented by counsel, testified. (Tr. 20-52.) ALJ Robert S. Chester presided. (Tr. 20.) The ALJ denied benefits on October 21, 2008. (Tr. 10-19.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 28 years old. (Tr. 27.) He lived in a mobile home with his parents, and had a driver's license. (Tr. 27-28.) When he was a teen, his parents moved from Walla Walla to Ephrata to get Plaintiff away from a street gang. (Tr. 332-33.) Plaintiff completed high school and one and one-half years of computer training, but he had to quit because he could no longer drive due to his increasingly severe anxiety attacks. (Tr. 28-29.) Plaintiff stopped working at a pizza restaurant and later at an auto express-lube store because he felt more and more frequently anxious, "almost like a claustrophobic feeling," and he believed he was about to "break down all the time." (Tr. 32-33.) Plaintiff testified that he tried to "stick it out and toughen it up," but his anxiety and panic overwhelmed him and he could no longer work. (Tr. 34.) Plaintiff described the problems he had with driving:

> I would start to basically get severe anxiety attacks especially like at stoplights. For some reason the heat – if it was like summertime the heat would really trigger an anxiety attack. And it wasn't only a physical anxiety attack, it was also a mental anxiety attack and that's what made it, you know, 10 times worse. I mean, I felt like I wanted to get out of the car and run and scream,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

1
2
3
4
5

> you know, because of the way I felt.  It was just too
> unbearable.  And also, you know, after that just little
> things started you know, affecting me and becoming big
> things such as you know, every time I hit a speed bump or
> I went over a hole I would start to feel like I hit
> somebody and I would have to go back and check and go back
> in circles.  And it was just bad, that feeling and that
> whole mental process.

6  (Tr. 36.)

7      Plaintiff experienced this everyday.  (Tr. 37.)  He also

8  experienced problems with his OCD habits, including constant

9  paranoia about germs on his hands, checking and re-checking doors,

10  locks and "everything" ten or fifteen times, and when he saw the

11  color red, he would "freak out" and that experience affected his

12  entire workday.  (Tr. 34-38.)  Plaintiff had hallucinations.  (Tr.

13  41.)  Plaintiff reported that he believed that people were talking

14  about him, laughing at him and that something was wrong with him.

15  (Tr. 39.)  As a result, he isolated himself.  (Tr. 39.)  In July

16  2008, Plaintiff began working the front counter at an athletic club.

17  (Tr. 29-30.)  He smokes two or three cigarettes per day, and is

18  trying to quit.  (Tr. 35.)  Plaintiff reported that Lorazepam and

19  Paxil helped his OCD symptoms, and therapy and exercise helped him

20  as well.  (Tr. 35; 37.)  Plaintiff requested a closed period of

21  consideration for disability from January 20, 2004, ending June 30,

22  2008.  (Tr. 10; 23.)

23                    **ADMINISTRATIVE DECISION**

24      ALJ Chester found Plaintiff's date of last insured for DIB

25  purposes was June 30, 2004.  (Tr. 10.)  At step one, he found

26  Plaintiff had not engaged in substantial gainful activity since

27  January 20, 2004.  (Tr. 12.)  At step two, he found Plaintiff had

28  severe impairments of "Depression, Obsessive-Compulsive Disorder,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

Panic Disorder without Agoraphobia and Personality Disorder." (Tr. 12.)  At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (Tr. 13.) In his step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the RFC findings.  (Tr. 16.)  He found that Plaintiff retained the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: superficial contact with the general public and limited collaboration with coworkers."  (Tr. 15.)

ALJ Chester found Plaintiff could perform his past work as a cashier, kitchen helper, and sales clerk.  (Tr. 18.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed

*de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the

claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ISSUES

Plaintiff contends that the ALJ erred by applying the incorrect legal standard, and that decision is not supported by substantial evidence. (ECF No. 14 at 3-4.) Plaintiff also contends that the hypotheticals posed to VE were flawed. (ECF No. 14 at 9.) Defendant contends the ALJ's decision is supported by substantial evidence and free of legal error. (ECF No. 17.)

## DISCUSSION

**1.   Substantial evidence.**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (ECF No. 14 at 4.) The court reviews the ALJ's decision denying plaintiff disability benefits to determine if the findings are supported by substantial evidence and whether the ALJ used the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan*, 169 F.3d at 599; *Meanel*, 172 F.3d at 1113. Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998); *Reddick*, 157 F.3d at 720.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

1    In determining whether the ALJ's findings are supported by
2    substantial evidence, the court reviews the administrative record as
3    a whole, weighing both the evidence that supports and the evidence
4    that detracts from the ALJ's conclusion. *Reddick,* 157 F.3d at 720.
5    "If the evidence can reasonably support either affirming or
6    reversing the [ALJ's] conclusion, the court may not substitute its
7    judgment for that of the [ALJ]." *Reddick*, 157 F.3d at 720-21.

8    An ALJ is required to consider all of the evidence available in
9    a claimant's case record, including evidence from medical sources.
10   42 U.S.C. § 423(d)(5)(B); see also 20 C.F.R. § 404.1527(d)
11   ("Regardless of its source, we will evaluate every medical opinion
12   we receive."). The term "medical sources" refers to both
13   "acceptable medical sources" and other health care providers who are
14   not acceptable medical sources. See 20 C.F.R. §§ 404.1502 and
15   416.902. In addition to evidence from the acceptable medical
16   sources, the ALJ is required to review evidence from other sources
17   to establish the severity of a claimant's impairments and how it
18   affects the claimant's ability to work. 20 C.F.R. § 404.1513(d).

19   The opinion of an examining physician is entitled to greater
20   weight than the opinion of a nonexamining physician. *Lester v.*
21   *Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995); *Pitzer v. Sullivan*,
22   908 F.2d 502, 506 (9th Cir. 1990). The ALJ must provide "clear and
23   convincing" reasons for rejecting the uncontradicted opinion of an
24   examining physician. *Lester,* 81 F.3d at 830-831; *Pitzer*, 908 F.2d
25   at 506. The opinion of an examining doctor, even if contradicted by
26   another doctor, can be rejected only for "specific" and "legitimate"
27   reasons that are supported by substantial evidence in the record.
28   *Andrews*, 53 F.3d at 1043.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

Rejecting a treating physician's opinion in favor of a non-treating physician's opinion, without more, is legally erroneous. *See Lester*, 81 F.3d at 830-31 (ALJ's rejection of treating physician's opinion was improper where it was based solely upon the testimony of a non-treating, non-examining medical advisor). Indeed, a non-examining medical advisor's testimony cannot "by itself constitute substantial evidence that warrants a rejection of either the treating doctor's or the examining psychologist's opinion." *Id*. at 833; *Pitzer*, 908 F.2d at 506 ("non-examining physicians' conclusion[s], with nothing more" do not constitute substantial evidence controverting an examining physician's opinion.)

In finding Plaintiff was not disabled, the ALJ indicated he assigned "significant weight to accepted medical sources while appropriately discounting the weight of evidence from non-accepted sources." (Tr. 18.) The ALJ specified that he gave lesser weight to social workers' diagnoses and opinions. (Tr. 18.) With regard to the opinions from "accepted" medical sources, the ALJ concluded that "the primary contrast between Dr. Gentile and Mr. Caldwell's opinions [are] regarding the level of difficulty the claimant experiences in his social activities." (Tr. 18.) The ALJ concluded that Dr. Gentile's assessment was more accurate. (Tr. 18.)

On August 25, 2006, Mary A. Gentile, Ph.D., completed a Psychiatric Review Technique form. (Tr. 281-94.) In that check-the-box form, Dr. Gentile indicated that Plaintiff's impairment was moderate in maintaining social function and he had mild limitations in restriction of daily activities and difficulties maintaining concentration, persistence and pace. (Tr. 291.) Dr. Gentile also

completed a Mental Residual Functional Capacity Assessment form.
(Tr. 295-97.)  Dr. Gentile assessed Plaintiff with three moderate
limitations - in the ability to work in coordination with or
proximity to others without being distracted by them, the ability to
interact appropriately with the general public and the ability to
get along with coworkers or peers without distracting them or
exhibiting behavior extremes.  (Tr. 295-96.)  Dr. Gentile's
narration indicated Plaintiff was able "to understand, remember, and
carry out simple and multi-step instruction.  He would be more
successful in a secluded or individual work environment."  (Tr.
297.)  Dr. Gentile also opined that Plaintiff would do best away
from the general public, with limited coworker interaction, and he
would be able to adjust to change, set realistic goals, avoid
hazards and travel or use public transportation.  (Tr. 297.)
Finally, it appears Dr. Gentile dismissed all non-accepted medical
source treating providers:  "insufficient for Title II DLI 6/30/04;
earlier records from Grant County MH are all non-doctoral
providers."  (Tr. 293.)

On April 26, 2005, Sean Caldwell, M.S. (Cand.), examined
Plaintiff and produced an evaluation that was adopted by Mahlon
Dalley, Ph.D.  (Tr. 152-55.)  Mr. Caldwell reported that while
Plaintiff said he had an obsessive fear of germs that impacted his
social interaction, he was able to sit in the lobby and interact
with others prior to his appointment, and to shake hands, open door
handles and put his hands on surfaces of tables.  (Tr. 152.)  At the
time of the evaluation, Plaintiff was taking Paxil and Lorazepam.
(Tr. 152.)  His results on the MMPI-2 indicate he experiences severe
emotional distress characterized by dysphoria, agitation, worrying

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

and anhedonia. (Tr. 154.) Mr. Caldwell diagnosed panic disorder without agoraphobia, personality disorder not otherwise specified with borderline features. (Tr. 154.) Mr. Caldwell found Plaintiff was markedly impaired in his ability to interact appropriately in public contacts and in the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. (Tr. 158.) Mr. Caldwell explained that "features of Peter's panic disorder may affect his ability to tolerate the social expectations and pressures of a normal work environment... [O]nce Mr. Martinez's symptoms have stabilized, he should be able to return to work." (Tr. 155; 157.)

On July 28, 2005, Sean Caldwell, M.S. (Cand.), examined Plaintiff a second time and produced an evaluation that was again adopted by Mahlon Dalley, Ph.D. (Tr. 160-64.) Plaintiff's results on the MMPI-2 again indicated he experiences severe emotional distress characterized by dysphoria, agitation, worrying and anhedonia. (Tr. 162.) Mr. Caldwell found Plaintiff remained markedly impaired in his ability to interact appropriately in public contacts and in the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. (Tr. 167.) He was also moderately impaired in several categories. (Tr. 166-67.) Similar to his April evaluation, Mr. Caldwell maintained the opinion that "[w]hile features of his personality disorder may affect his personal and professional relationships, features of his depressive and anxiety disorders will likely affect his ability to tolerate the social pressures and expectations of a normal work environment. . . . Once his symptoms stabilize, Mr. Martinez should be able to return to work." (Tr. 163.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

1    On de novo review, the record reveals the differences between
2  Dr. Gentile's and Mr. Caldwell's assessments are more significant
3  than a mere difference in assessed limitations related to "social
4  activities." (Tr. 18.)  Dr. Gentile found Plaintiff was able to
5  work with three moderate limitations. (Tr. 295-96.) Mr. Caldwell,
6  on the other hand, found Plaintiff was incapable of working until
7  his symptoms stabilized.   After both examinations, Mr. Caldwell
8  concluded that Plaintiff's panic and/or personality disorder caused
9  significant impairments in his ability to tolerate the social
10 expectations and pressures of a normal work environment. (Tr. 155;
11 157; 163.)

12    The social activities cited by the ALJ as support for adopting
13 Dr. Gentile's assessment over Mr. Caldwell's included:  "during the
14 closed period, the claimant has been able to attend parties, go on
15 long-distance trips, and visit with friends." (Tr. 18.)

16    In records that span over four years, evidence exists that
17 Plaintiff attended two parties – the first party was during a trip
18 to Seattle with a friend, in July 2003, before the beginning of the
19 closed period. (Tr. 460.) The second party occurred in March 2006.
20 Plaintiff left during the party because he began to experience a
21 severe panic attack.  He ended up in the hospital emergency room.
22 (Tr. 170.)

23    One of Plaintiff's treatment goals was to "get out more" and
24 socialize with friends. (Tr. 444-70; 493; 497.)  Evidence exists
25 Plaintiff took one trip to go crab fishing in July 2006, and at the
26 appointment prior to departure, he requested an increase in his
27 medications because he recently had experienced increasing panic
28 episodes. (Tr. 266.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

1    The reasons relied upon by the ALJ that justify giving more
2 weight to Dr. Gentile's assessment are neither specific and
3 legitimate, nor supported by substantial evidence.  The ALJ failed
4 to give specific and legitimate reasons supported by substantial
5 evidence for rejecting Mr. Caldwell and Dr. Dalley's assessments of
6 Plaintiff's limitations.

7    Moreover, Dr. Gentile's assessment that Plaintiff is "able to
8 understand, remember, and carry out simple and multi-step
9 instruction" is not supported by substantial evidence, and is
10 contradicted by other opinion testimony.  (Tr. 297.)  For example,
11 Heidi Whitney, M.S., evaluated Plaintiff on January 4, 2005, and
12 found Plaintiff had marked impairments in his ability to understand,
13 remember and follow complex instructions.  (Tr. 481.)  The
14 assessment from Brian G. Milliken, MA, LMCH, on June 24, 2005,
15 echoes this finding of marked impairment in the ability to
16 understand, remember and follow complex instructions.  (Tr. 477-78.)
17 Because Dr. Gentile's assessment is not supported by the record, and
18 because that assessment does not constitute substantial evidence
19 controverting the examining providers, the ALJ erred by adopting Dr.
20 Gentile's assessment and rejecting the other examining providers.

21    **2.   Other source medical opinions.**

22    An ALJ may discount the opinion of a non-acceptable medical
23 source by providing reasons that are "germane" to that source.  Cf.
24 *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Dodrill v.*
25 *Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Such reasons include
26 conflicting medical evidence, prior inconsistent statements, or a
27 claimant's daily activities.  *Lewis v. Apfel*, 236 F.3d 503, 511-12
28 (9th Cir. 2001).  In this case, the ALJ indicated he discounted "the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

weight of evidence from non-accepted sources. Specifically, the undersigned has given lesser weight to social workers' diagnoses and opinions that the claimant was either markedly or severely limited in his functions." (Tr. 18.) Without further elaboration, the ALJ rejected the opinions of Heidi Whitney, M.S., Brian G. Milliken, M.A., LMCH, and Katheryn Espinoza, M.S.W., based solely on the non-accepted medical source status. This was error.

The fact that the identified examiners were not acceptable medical sources does not mean that, under the law, these opinions must automatically be given less weight. The opinion of a medical source other than an accepted medical source may be accorded weight depending on the factors listed in 20 C.F.R. § 416.927(c)— i.e., how long the source has known and how frequently the source has seen the individual, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the claimant's impairment, and any other factors that tend to support or refute the opinion. See SSR 06-3p. Social Security Ruling 06-3p specifically states that, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may [even] outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." SSR 06-3p.

In this case, it is not apparent that the ALJ made a complete consideration of the above factors specified in § 416.927(c) in evaluating the "other source" opinions. The assessments of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

1    Plaintiff by the "other source" medical providers are largely

2    consistent, supported by the record, and discounting the opinions

3    because they were not from "acceptable medical sources" was error.

4        **3.    Remand.**

5        The court has discretion in deciding whether to remand for

6    further proceedings or for immediate payment of benefits. *Harman*,

7    211 F.3d at 1178.    The issue turns on the utility of further

8    proceedings.    A remand for an award of benefits is appropriate when

9    no useful purpose would be served by further administrative

10   proceedings or when the record has been fully developed and the

11   evidence is insufficient to support the Commissioner's decision.

12   *Strauss v. Comm'r*, 635 F.3d 1135, 1138 (9th Cir. 2011) (quoting

13   *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).    The

14   reviewing court may not award benefits punitively, and must conduct

15   a credit-as-true analysis to determine if a claimant is disabled

16   under the Act.    *Id.* at 1138.

17       Under the "crediting as  true" doctrine, evidence should be

18   credited and an immediate award of benefits directed where "(1) the

19   ALJ has failed to provide legally sufficient reasons for rejecting

20   such evidence, (2) there are no outstanding issues that must be

21   resolved before a determination of disability can be made, and (3)

22   it is clear from the record that the ALJ would be required to find

23   the claimant disabled were such evidence credited." *Id*. The

24   "crediting as true" doctrine is not a mandatory rule in the Ninth

25   Circuit, but leaves the court flexibility in determining whether to

26   enter an award of benefits upon reversing the Commissioner's

27   decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)

28   (citing *Bunnell*, 947 F.2d 341, 348 (9th Cir. 1991).    The court must

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

finally determine whether the record clearly requires an award of benefits after the improperly rejected evidence is credited. *Strauss*, 635 F.3d at 1138.

Listing 12.06 reads as follows:

In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

a. Motor tension; or

b. Autonomic hyperactivity; or

c. Apprehensive expectation; or

d. Vigilance and scanning;

Or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

B. Resulting in at least two of the following:

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 15

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.
or

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

The other source opinions included the January 4, 2005, evaluation by Heidi Whitney, M.S. Ms. Whitney found Plaintiff had severe impairments related to verbal expression of anxiety or fear, social withdrawal, the ability to relate appropriately to co-workers and supervisors, and the ability to respond appropriately to and tolerate the pressures and expectations of a normal setting. (Tr. 481-82.) She also found he had marked impairments of depressed mood, paranoid behavior, global illness, the ability to understand, remember and follow complex instructions, the ability to learn new tasks, the ability to exercise judgment and make decisions, and the ability to interact appropriately in public contacts. (Tr. 481.) Ms. Whitney noted that medication "helped him a great deal to function on [a] daily basis." (Tr. 483.) Ms. Whitney concluded that Plaintiff was "acutely mentally ill" and noted that while Plaintiff likes to work, he has not been able to hold down a job for more than a couple of months because he cannot handle "being under someone's control." (Tr. 483.)

On June 24, 2005, Brian G. Milliken, MA, LMCH, evaluated Plaintiff and found he had a severe impairment in global illness

based upon the intensity and pervasiveness of all symptoms and impairments of functioning, along with marked impairments in depressed mood, the ability to understand, remember and follow complex instructions, and in the ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting. (Tr. 477-78.) He assessed Plaintiff with multiple moderate impairments. (Tr. 477-78.) Mr. Milliken concluded that Plaintiff was "acutely mentally ill" and noted that he "appear[ed] to be progressing toward treatment goals." (Tr. 479.)

On January 1, 2006, Katheryn E. Espinoza, MSW, examined Plaintiff and completed a Psychological/Psychiatric Evaluation form. (Tr. 472-74.) Ms. Espinoza found Plaintiff had a severe impairment relating to his ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting. (Tr. 474.) Ms. Espinoza also assessed Plaintiff with multiple marked impairments including depressed mood, verbal expression of anxiety or fear, social withdrawal, motor agitation, thought disorder, global illness, the ability to exercise judgment and make decisions, the ability to interact appropriately in public contacts, and the ability to control physical or motor movements and maintain appropriate behavior. (Tr. 472-74.) Ms. Espinoza noted that due to his OCD, Plaintiff is repetitive in several of his actions and this impairs his judgment and ability to perform tasks, and also limits his abilities in the social realm. (Tr. 474.) Ms. Espinoza opined that Plaintiff "can learn how to control aspects of his OCD but he will always have to deal with this disorder." (Tr. 47.) She concluded Plaintiff was "chronically mentally ill." (Tr. 475.)

In this case, Plaintiff's counsel posed a hypothetical to the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17

1  vocational expert incorporating the improperly rejected medical

2  opinions:

3       Q.   I'd like you to assume, Mr. McKinney, that similarly
             this individual would have no exertional limitations,
4            but nonexertional limitations would be as follows.
             This person would have severe limitations in the
5            ability to relate appropriately to coworkers and
             supervisors and in the ability to respond
6            appropriately to and tolerate the pressures and
             expectations of a normal work setting.  Would have a
7            marked limitation in the ability to understand,
             remember, and follow complex, more than two-step
8            instructions.  Would have moderate limitations in the
             ability to understand, remember and follow simple one
9            or two-step instructions in the ability to learn new
             tasks, in the ability to exercise judgment and make
10           decisions, and in the ability to interact
             appropriately in public contacts.   With those
11           limitations could such an individual perform past
             relevant work?

12
         A:   No, he could not.
13
         Q.   Is there any other work that such an individual could
14            perform in the national economy?

15       A.   I think with these limitations the person would not
              be able to maintain any form of competitive
16            employment.  I think the person would have difficulty
              with sheltered jobs.

17

18  (Tr. 48.)  Plaintiff's counsel offered two additional hypotheticals

19  that altered the severity of the impairments.  The first alternate

20  hypothetical included marked limitations in the ability to

21  understand, remember, and follow complex, more than two-step

22  instructions and in the ability to respond appropriately to and

23  tolerate the pressures and expectations of a normal work setting.

24  The individual also would have moderate limitations in the ability

25  to understand, remember and follow simple one or two-step

26  instructions in the ability to learn new tasks, in the ability to

27  exercise judgment and make decisions, and in the ability to perform

28  routine tasks, and the ability to control physical or motor

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 18

movements and maintain appropriate behavior. (Tr. 49.) The VE indicated that hypothetical person would not be able to maintain competitive employment. (Tr. 49.)

The second alternate hypothetical offered by Plaintiff's counsel described an individual who suffered severe limitations in the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. Also, the person would have marked limitations in the ability to exercise judgment and make decisions, in the ability to interact appropriately in public contacts and in the ability to control physical or motor movements and maintain appropriate behavior. Additionally, the individual would have a moderate limitation in the ability to learn new tasks. (Tr. 49-50.) The VE indicated that hypothetical person would not be able to maintain competitive employment. (Tr. 50.)

When the other source medical opinions are properly credited, it is apparent that Plaintiff could not sustain work during the closed period. Because the evidence establishes that Plaintiff was unable to maintain employment during the closed period, remand for further administrative proceedings serves no useful purpose and is unwarranted.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. Because no remaining issues exist that must be resolved and it is clear from the record that Plaintiff is entitled to disability benefits for the closed period, the court REMANDS to the Commissioner of Social Security for an award of benefits. Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is **GRANTED** and the matter is remanded to the Commissioner for an immediate award of benefits.

2.   Defendant's Motion for Summary Judgment **(ECF No. 16)** is **DENIED.**

3.   An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be CLOSED.

DATED July 31, 2012.


                    <u>      S/ CYNTHIA IMBROGNO      </u>
                     UNITED STATES MAGISTRATE JUDGE